IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH A. HARROLD,<br>              Plaintiff, | )<br>)<br>) |
| vs. | )   Civil Action No. 07-1284<br>)   Magistrate Judge Amy Reynolds Hay |
| MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br>              Defendant. | )<br>)<br>) |

## OPINION[1]

Hay, Magistrate Judge

Plaintiff, Joseph A. Harrold, brought this action under 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision disallowing his claim for child's disability insurance benefits ("CDIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f.

**A.  Procedural History**

Plaintiff filed an application for benefits on June 10, 2005, alleging disability as of June 11, 1987, due to attention deficit hyperactivity disorder ("ADHD") and autism (Tr. 49-51). Plaintiff's claims were denied on October 17, 2005, and on November 14, 2005, plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 28-32, 34).

A hearing was held on August 21, 2006, at which time plaintiff, who was represented by counsel, his mother and a vocational expert ("VE") were called to testify (Tr. 277-316). The ALJ issued a decision on December 1, 2006 (Tr. 11-21), finding that plaintiff is

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties consented to have a United States magistrate judge conduct all proceedings in this case, including the entry of final judgment. Dkt. [8], [9].

capable of performing a significant range of light work that exists in the national economy and, thus, is not disabled as defined under the Act (Tr. 21). The Appeals Council denied plaintiff's request for review on July 27, 2007, making the ALJ's decision the final decision of the Commissioner (Tr. 5-7).

    B.    **Medical History**

Plaintiff was administered the Wechsler Intelligence Scale for Children (WISC-III) on two occasions in order to assess his educational needs. In January of 1993, at the age of 5 years, 7 months, plaintiff obtained a Verbal IQ of 91, a Performance IQ of 84, and a Full-Scale IQ of 81 (Tr. 126). Seventeen months later, in May of 1994, plaintiff was referred to the Child Development Unit of Children's Hospital because he was having difficulties in school with a limited attention span and difficulty finishing tasks independently without supervision (Tr. 244-50). Plaintiff was administered the WISC-III at that time as well, revealing a Verbal IQ of 95 and a Performance IQ of 69 (Tr. 246). In terms of his cognitive functioning, it was noted that plaintiff had above-average reading, vocabulary, and verbal skills, but below-average performance skills, particularly in the areas of dexterity, freedom from distractability, and visual motor skills (Tr. 246). The examiner recommended that plaintiff be promoted from first to second grade and that he receive learning support services (Tr. 245).

On August 18, 2005, Margaret McKinley, Ph.D., performed a consultative psychological examination of plaintiff at the request of the State Agency. Dr. McKinley indicated that plaintiff had been diagnosed with ADHD and Asperger's Syndrome at Children's Hospital in either the fourth or fifth grade and had been in counseling at the Connellsville Counseling Center while in the seventh grade (Tr. 129). Dr. McKinley noted that plaintiff was

2

prescribed Ritalin for a short period of time but stopped taking it due to side effects (Tr. 129). She also noted that plaintiff was assigned a Therapeutic Support Staff ("TSS") to assist him in school and had been in special education classes since elementary school (Tr. 130). As well, Dr. McKinley's notes indicate that plaintiff was not receiving any counseling services at the time and was no longer on any medication (Tr. 130).

   Dr. McKinley further noted that plaintiff was not anxious during the interview and denied being depressed although plaintiff reported having mild anxious moods with no panic attacks (Tr. 131). Plaintiff also reported to Dr. McKinley that he generally has good concentration ability except he gets distracted at school when the other kids are "goofing off," and that he has "hurt feelings" due to the actions of the other children at school (Tr. 131). Although plaintiff's father indicated that plaintiff needed to be reminded to take care of himself, plaintiff reported that he performs his own hygiene (Tr. 131). Dr. McKinley also noted that plaintiff does dishes and lawn work, including riding the tractor and lawn sweeper, and helps with the laundry (Tr. 131). Plaintiff reported to Dr. McKinley that his biggest problem was social functioning, indicating that when he tries to do things that other kids do, "it just doesn't feel right" (Tr. 132). Plaintiff also reported, however, that he enjoyed hiking and camping, that he rides his bike and was an Eagle Scout (Tr. 132).

   Based on her examination, Dr. McKinley estimated plaintiff's intellectual ability to be in the low average range and diagnosed plaintiff with ADHD and Asperger's Disorder (Tr. 131, 132). Dr. McKinley also assessed plaintiff with a GAF of 50, and opined that the likelihood of substantial improvement was guarded (Tr. 132).

On the mental assessment form, Dr. McKinley indicated that plaintiff was "moderately" impaired in understanding, remembering, and carrying out short, simple instructions, but had "marked" limitations with respect to his ability to understand and remember detailed instructions, carry out detailed instructions, and make judgments on simple worker-related decisions (Tr. 135). Noting that plaintiff "has major difficulties in situations when working and interacting with others," Dr. McKinley also concluded that plaintiff had "extreme" limitations in his ability to interact appropriately with the public, supervisors, or co-workers, and in his ability to respond appropriately to work pressures and changes in a usual work setting (Tr. 135).

On October 6, 2005, Psychologist Edward James, Ph.D., reviewed plaintiff's records at the request of the State Agency (Tr. 136-152). Dr. James completed a mental evaluation form and assessed plaintiff with "mild" restrictions of activities of daily living, "moderate" difficulties with social functioning, and "moderate" difficulties in maintaining concentration, persistence or pace (Tr. 146). Dr. James stated that Dr. McKinley's assessment was not given full weight "due to inconsistencies with the totality of the evidence in the file," and expressed the view that Dr. McKinley's opinions overestimated the severity of plaintiff's functional limitations (Tr. 151). It also appears that Dr. James considered plaintiff's 1993 IQ scores, showing a Verbal IQ of 91, a Performance IQ of 84, and a Full-Scale IQ of 81, as well as an IEP from Connellsville Area High School dated May 26, 2005, indicating that plaintiff worked hard, was making adequate progress, and achieving his goals and objectives (Tr. 126-27). Based on his review of plaintiff's records, Dr. James concluded that plaintiff "retained the capacity to meet the basic mental demands of competitive work on a sustained basis" (Tr. 151).

### C. Hearing Testimony and ALJ Decision

At the administrative hearing, plaintiff testified that he was born on June 11, 1987, and, thus, was 19 years old at the time, and that he had graduated from high school where he had been enrolled in special education classes (Tr. 281-82). Plaintiff also testified that he was about to begin a two year vocational training program in heating and air conditioning at Westmoreland County Community College having received some training in the field in high school (Tr. 282-83). Plaintiff also indicated that he lived at home with his parents (Tr. 283).

As well, it appears that plaintiff has a driver's license and drives about 30-35 miles a week. Plaintiff also testified and that he just started a job making sandwiches at Quiznos Subs three days a week and that because of knee and back problems he has to sit down every 45 minutes to an hour during a shift (Tr. 283-85, 286). He further testified that he had two previous jobs but had difficulty performing his duties because he had to take too many breaks, his doctors had restricted him to lifting no more than 35 to 40 pounds, and the pain in his knees and back caused him to work too slowly (Tr. 287). According to plaintiff, he has severe degeneration in his knees and back and is unable to work because of the pain which requires him to frequently stop and take breaks (Tr. 287-88). Plaintiff indicated that on a scale of one to ten the pain level in his knees is between seven and eight and sometimes nine to nine and a half, but that no one has suggested that he needs surgery (Tr. 289).

Plaintiff also indicated that he plays the guitar, helps clean the house, does a little bit of cooking, that he likes to go bike riding and hiking and, when he gets the chance, camping (Tr. 290). As well, plaintiff testified that he helps with the laundry but gets confused

5

separating the clothes (Tr. 291). Plaintiff also reported that he obtained the rank of Eagle Scout in high school and was currently an assistant scout master for a boy scout troop (Tr. 291-92, 301).

Plaintiff testified further that he was able to walk about a half mile, could sit or stand for about forty-five minutes at a time, and that he uses a board as a mattress which somewhat helps his lower back pain. Plaintiff indicated that he lies on the board about one and a half to two hours a day (Tr. 292, 300). As well, it was plaintiff's testimony that he has been seeing a counselor every two weeks for almost two years and a physical therapist twice a week for close to a year, and that the only medication he takes is Allegra-D for allergies (Tr. 293-96).

Upon examination by his attorney, plaintiff testified that he gets confused easily, that it takes him about a year to adjust to any change, that sometimes he gets caught up in one activity and forgets what else he has to do, and that he has trouble processing what he's supposed to do when people are talking too fast (Tr. 296-98). Plaintiff allowed that he has only one good friend because they can focus on one subject whereas other kids avoid him because he has trouble conversing about more than one thing at a time (Tr. 298-99).

Plaintiff's mother was also called to testify at the hearing and allowed that plaintiff has trouble getting along and communicating with his peers; that he gets confused when he tries to sort the laundry; that he has difficulty replacing items back on a shelf in the proper order; that he misplaces things and misses appointments despite the fact that he has a written schedule to follow; that he moves too slowly; and that he has to be constantly retold what to do (Tr. 302, 303, 304, 305, 306). She also allowed that plaintiff "gets lost" on the concept of time and that, contrary to plaintiff's testimony that he has been in physical therapy for close to a year,

6

he just started physical therapy again a week or so before the hearing (Tr. 305). Mrs. Hill also testified that plaintiff has a hard time with changes, gets nervous and confused and has to stop what he's doing and regroup (Tr. 307-08).

A VE was also called to testify at the hearing and was asked whether any jobs exist in the economy at the medium, light or sedentary level that a person of plaintiff's age with his education and background, needing a low stress environment and an entry level, unskilled, routine and repetitive position, involving very simple instructions that may be written down, simple decision making, no production line work, providing a stable environment with limited contact with the public and co-workers, and a sit/stand option about every forty-five minutes to an hour. In response, the VE testified that such an individual could perform work at the medium level such as a laundry worker and a janitor, and at the light level in light housekeeping and as a cafeteria worker, and that all these positions exists in significant numbers in the national economy and in the Commonwealth of Pennsylvania (Tr. 313-14). The VE also testified, however, that given the limitations in the hypothetical regarding limited or no contact with the general public, no production type work and a low stress environment, no jobs existed in significant numbers at the sedentary level (Tr. 314). He also allowed that if the individual needed to be off task for up to ten percent of the time, they would not be able to function in any of the cited positions and that anything over five percent would likely not be tolerated (Tr. 314). In response to questioning by plaintiff's counsel, the VE testified that if the individual had no ability to respond appropriately to usual work pressures or changes in a routine work setting, he or she would not be employable (Tr. 315).

Based on this evidence the ALJ found that although plaintiff suffered from severe impairments, they did not meet or equal the criteria of a listed impairment in 20 C.F.R. § 404.1520(c) and 416.920(c) (Tr. 20). The ALJ also found that although plaintiff was unable to perform a full range of light work given his exertional limitations, he nevertheless had the residual functional capacity to perform a significant range of light work with the option to sit or stand every forty-five minutes to an hour, and the additional limitations of needing a low stress environment, an entry level, unskilled, routine and repetitive position, involving very simple instructions that may be written down, simple decision making, no production line work, providing a stable environment with limited contact with the public and co-workers (Tr. 20, 21). Because certain light level jobs existed in the national economy that plaintiff could perform with these limitations, the ALJ concluded that plaintiff was not disabled (Tr. 21).

D.     **Standard of Review**

Presently before the Court are the parties' cross-motions for summary judgment. Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Edelman v. Commissioner of Social Security, 83 F.3d 68, 70 (3d Cir. 1996). In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Substantial evidence is defined as less than a preponderance and more than a mere scintilla. Perales, 402 U.S. at 402. If supported by

substantial evidence, the Commissioner's decision must be affirmed. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is generally used to determine disability eligibility and requires the Commissioner to consider, in sequence, whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy. See 20 C.F.R. §§ 404.1520(a) and 416.920(a). With respect to childhood disability benefits, the regulations provide for a three-step sequential evaluation requiring the Commissioner to consider: (1) whether the child is working; (2) whether the child has a medically determinable impairment or combination of impairments that is severe, and (3) whether the child's impairments meet, medically equal or functionally equal the requirements of a listed impairment. 20 C.F.R. § 416.924.

Here, utilizing the five-step evaluation, the ALJ determined that plaintiff was not disabled at the third and fifth steps, finding that although plaintiff's impairments are severe within the meaning of the regulations they are not severe enough to meet or medically equal, either singly or in combination one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4, and that plaintiff's residual functional capacity ("RFC"),[2] nevertheless allowed him to perform work that exists in significant numbers in the regional and national economies. 42 U.S.C. §§ 404.1560(c) and 416.960(c). See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

---

[2] A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

9

### E. Discussion

Plaintiff initially argues that the ALJ erred by failing to evaluate evidence establishing that plaintiff meets Listing 112.05D regarding mental retardation.

Listing 112.05 provides that mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning," and that, "[t]he required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied." Subsection D, which is at issue here, states that the required level of severity will be met where the claimant has, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 112.05. Because the instant plaintiff was assessed with a Performance IQ score of 69 in May of 1994, he argues that he has met the criteria set forth in Listing 112.05D. The Court disagrees.

The introductory paragraph to § 112.00 explains how to apply the listings and, with respect to Listing 112.05, states that, "Listing 112.05 (Mental Retardation) contains six sets of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the six sets of criteria, we will find that the child's impairment meets the listing." 20 C.F.R., Part 404, Subpt. P, App. 1, § 112.00A (emphasis added). As previously discussed, and as acknowledged by plaintiff, the introductory statement to Listing 112.05, provides that mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 112.05. Thus, in order to meet Listing 112.05D, plaintiff must establish that he has significantly subaverage general intellectual functioning with deficits in adaptive functioning in addition to a valid verbal,

performance, or full scale IQ of 60 through 70 -- the one of six enumerated criteria that plaintiff claims applies. See In re Petition of Sullivan, 904 F.2d 826, 841 (3d Cir. 1990) (Finding that when a claimant has met the capsule definition he must then match the severity requirement); Smith v. Barnhart, 2006 WL 1450609 at * 1 (E.D. Pa. 2006) (Finding that Smith did not meet listing 12.05 even though she had a performance IQ of 68 and a valid physical impairment, because she failed to show the requisite deficits in her adaptive functioning); 71 Fed. Reg. 10419-01, 2006 WL 467856 (March 1, 2006) ("[T]o meet listings 12.05 and 112.05, you must have mental retardation that satisfies the criteria in the introductory paragraph of those listings (the so-called capsule definition) in addition to the criteria in one of the paragraphs that follows the capsule definition; that is, listing 12.05A, B, C, or D for adults or 112.05A, B, C, D, or E for children").

Although plaintiff was assessed as having a Performance IQ of 69 in 1994, there is no evidence that he has significantly subaverage general intellectual functioning with deficits in adaptive functioning. To the contrary, not only is there is no diagnosis of mental retardation but both Drs. McKinley and James reported plaintiff as having only "low average intelligence" (Tr. 131, 151). Moreover, other evidence of record shows that plaintiff's teachers reported that he was making adequate progress his senior year in high school, that he, in fact, graduated from high school and was enrolled in a two year heating and air conditioning program at Westmoreland County Community College (Tr. 127, 282-83).

Notably, plaintiff has not addressed the diagnostic description in the introductory paragraph of Listing 112.05 or pointed to any evidence of record which would support a finding

11

that he has significantly subaverage intellectual functioning. As such, we cannot find that the ALJ erred by failing to address whether plaintiff met or equaled Listing 112.05D.

This is particularly true here where, under the regulations, plaintiff's Performance IQ of 69 is no longer a proper measure of his intellectual functioning. Indeed, under the regulations, a child's IQ testing must not only be valid but must also be a current measure of the child's mental ability. Specifically, the regulations provide that:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

20 C.F.R. § 112.00(d)(10).

Here, plaintiff's Performance IQ of 69 was assessed in May of 1994 when plaintiff was still six years old and is clearly above 40. See (Tr. 281). Hence, under the regulations, the score was only current for one year and could not be properly considered in assessing whether, ten years later, plaintiff met the Listing 112.05D.

Plaintiff also argues that the ALJ erred by failing to properly evaluate plaintiff's claims for CDIB in accordance with the regulations which, absent a finding that a child's impairments meet or equal a listing, require the ALJ to determine whether the child has limitations that "functionally equal" the listings.

Indeed, as previously discussed, under the Social Security regulations, an application for child disability benefits is evaluated according to a three-step sequential process which requires the ALJ to determine: (1) whether the child is engaging in substantial gainful activity; (2) whether the child has a medically determinable impairment or combination of impairments that is severe; and (3) whether the child's impairments, considered alone or in combination, meet, medically equal, or functionally equal any listing set forth in 20 C.F.R. 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924. See Cosby v. Commissioner of Social Security, 231 Fed. Appx. 140, 145-46 (3d Cir. 2007). To satisfy the "functionally equal" standard in the third step, the child must suffer from "marked" limitations in two or more domains of functioning or an "extreme" limitation in one domain. Id. See 20 C.F.R. § 416.926a(a). The six domains of functioning in which a child's limitations are evaluated are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A claimant demonstrates a "marked" limitation in a domain if his impairment seriously interferes with his ability to "independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). An "extreme" limitation interferes very seriously with the claimant's ability to "independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Notably, plaintiff does not argue that his limitations functionally equal a listing, nor does he discuss the evidence allegedly overlooked by the ALJ that would support such a finding. Rather, without citing to any authority, plaintiff argues that the case must be remanded solely because the ALJ did not specifically analyze the "functional equivalence" factors.

An ALJ, however, "is not required 'to use particular language or adhere to a particular format in conducting his analysis.'" Cosby v. Commissioner of Social Security, 231 Fed. Appx. at 146, quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Rather, all that is required is that the decision, when read as a whole, "be capable of providing meaningful judicial review." Id.

Here, notwithstanding the ALJ's failure to identify the relevant domains, there is nevertheless substantial evidence to support a finding that plaintiff does not have an impairment that is the functional equivalent of a listing. With respect to the first two domains -- acquiring and using knowledge and attending and completing tasks -- as found by the ALJ, the record shows that, notwithstanding the fact that plaintiff was in special education classes, he graduated from high school and obtained his driver's license as well as the rank of Eagle Scout (Tr. 16). Moreover, his teachers indicated in an IEP from Connellsville Area School dated May 26, 2005, that plaintiff worked hard, was making adequate progress and achieving his goals and objectives. He was also enrolled in a two year heating and air conditioning program at Westmoreland County Community College (Tr. 16, 127). Further, Dr. James, noting plaintiff's 1993 IQ scores reflecting a Verbal score of 91, a Performance IQ of 84 and a Full-Scale IQ of 81, found that plaintiff had only moderate difficulties in maintaining concentration, persistence or pace (Tr. 146). Even Dr. McKinley reported plaintiff's intellectual ability to be in the low average range; that his concentration was good; his though processes were goal-directed; that he had no history of language impairments; that he did chores around the house; and that he had fair insight into his medical and psychological problems (Tr. 131). This evidence suggests that plaintiff has no

more than a moderate limitation in acquiring and using knowledge or attending and completing tasks.  See 20 C.F.R. §§ 416.926a(g), (h).

With respect to the third domain, interacting and relating to others, the ALJ is to consider not only how well the claimant is able to initiate and sustain emotional connections with others, but how well a claimant develops and uses the language of his or her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. § 416.936a (i).  As noted by the ALJ, Dr. James found that plaintiff had only moderate difficulties with social functioning (Tr. 17).  Although plaintiff indicated to Dr. McKinley that, "it just doesn't feel right" when he tries to do things with other kids and testified at the hearing that he only has one good friend because he has difficulty taking about more than one subject at a time, there is also evidence that plaintiff attended and graduated from high school and, at the time of the hearing, was an assistant scout master, both of which would require plaintiff to make some connections and have some exchanges with others (Tr. 132, 298).  Moreover, plaintiff not only reported a good family life but failed to report any difficulty interacting with customers or co-workers while working part time at Quiznos Subs (Tr. 130).  Further, there is no evidence of record which suggests that plaintiff is unable to cooperate with others, comply with rules, respond to criticism, or respect the possessions of others.  Thus, the evidence does not support a finding that plaintiff's limitations in this area are either marked or extreme.

Nor does the evidence suggest that plaintiff has a marked or extreme limitation in moving about and manipulating objects -- the fourth domain.  As noted by the ALJ, although there is MRI evidence that plaintiff has bilateral meniscal degeneration in both knees and is

15

found to have spinal bifida deformity of L5-S1, plaintiff indicated that he is able to ride a bike, play the guitar, hike, camp, do lawn work, drive a car, and apparently make sandwiches, without difficulty (Tr. 16, 17, 283-86, 290). Under these circumstances, there is ample evidence to support a finding that plaintiff's limitation in this regard are no more than mild. See 20 C.F.R. § 416.936a(j).

Similarly, the record evidence substantially supports a finding that plaintiff has no more than a moderate limitation in his ability to care for himself. See 20 C.F.R. § 416.926a(k). Plaintiff has indicated that he has a good family life; that he has a number of hobbies, including biking, hiking, playing the guitar and collecting gauges; that he takes care of his personal hygiene and helps keep the house clean; that he takes medication for his allergies on an as need basis; that he attends goes to physical therapy as needed for his back and knees; and that he doesn't drink or smoke (Tr. 130, 131, 285, 289-90; 295). Further, as already discussed, Dr. McKinley indicated that plaintiff is quite proud of his accomplishment of becoming an Eagle Scout and had fair insight into his medical and psychological problems (Tr. 130, 132). Although both plaintiff and his mother testified at the hearing that he has difficulty adjusting to change, this factor alone does not suggest that plaintiff has a marked limitation in his ability to care for himself (Tr. 296-98, 307-08).

Lastly, there does not appear to be a marked or extreme limitation on plaintiff's health and physical well being, which requires the ALJ to look at the "cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the plaintiff's] functioning," that were not considered in assessing the plaintiff's ability to move about. 20 C.F.R. § 416.926a(l). Indeed, there appears to be no evidence of record to suggest that

16

plaintiff suffers from dizziness, lethargy, agitation, seizures, headaches, incontinence, nausea, or headaches or that he suffers physical effects from any medications that he is taking. Id.

Because plaintiff does not have a marked or extreme limitation in any of the domains, it cannot be said that plaintiff's limitations are functionally equivalent to any of the listings and the ALJ's finding that plaintiff was not entitled to CDIB is supported by substantial evidence.

Plaintiff nevertheless argues that the ALJ erred in otherwise concluding that plaintiff had the RFC to perform light work. In particular, plaintiff faults the ALJ for not giving significant weight to Dr. McKinley's assessment and for not identifying in what manner her assessment conflicted with the body of her report and the other evidence of record. The Court finds plaintiff's argument to be without merit.

Review of the ALJ's decision shows that she found Dr. McKinley's conclusions as stated on the assessment form -- i.e., that plaintiff has a marked impairment of ability to understand, remember and carry out detailed instructions and to make judgments on simple work related decisions, and had extreme limitation of ability to interact appropriately with the public, supervisors and co-workers and to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting -- inconsistent with her findings as stated in her narrative report in which she indicated that plaintiff was no longer on medication; that he reported having mild anxious mood and a flat affect; that he was able to perform serial 7's and multiply 5 times 9 correctly; that he reported having good concentration except when someone was goofing off around him; that immediate recall and retention were average; that plaintiff reported performing his own hygiene, doing dishes and other chores around the house including

17

lawn work; that plaintiff reported that he rides a bicycle, and likes to hike and camp; and that he was proud of being an Eagle Scout (Tr. 16-17). The ALJ also noted that Dr. McKinley's conclusions on the assessment form were inconsistent with the evidence as a whole again citing to the fact that plaintiff performs household chores, enjoys riding a bicycle and camping with his family, and that he is an assistant scout master for a boy scout troop and is enrolled in a two year college course in heating and air conditioning (Tr. 17). The ALJ also cited to the fact that plaintiff graduated from high school, had become an Eagle Scout, has a driver's licence and drives 30 to 35 miles a week, buys his own gas, takes care of his personal hygiene independently, shops and does some cooking (Tr. 16).

Although the ALJ did not specifically state that this evidence provided the basis for her conclusion that Dr. McKinley's findings were in conflict with other evidence of record, it nevertheless appears to offer the "clue" as to the ALJ's reasoning that plaintiff finds lacking. Indeed, when the ALJ's decision is read as a whole it is clear, for instance, that Dr. McKinley's assessment that plaintiff was extremely limited in his ability to interact with the public, co-workers and supervisors is in conflict with her own observations that plaintiff graduated from high school, had become an Eagle Scout, was a scout master for a boy scout troop and was enrolled in a two year program at the community college. Moreover, as noted by the Commissioner, when asked at the hearing about his present source of income, plaintiff testified that he was working part time making sandwiches at Quiznos Subs and that while he had some physical difficulties because he has to sit down periodically due to his knee and back problems, plaintiff did not mention any difficulties interacting with the public or co-workers (Tr. 286).

Further, contrary to plaintiff's assertion, the ALJ did not reject Dr. McKinley's opinion based solely on her own review and interpretation of the record but relied on contrary medical evidence. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) (An ALJ may reject the opinion of a treating physician's opinion only on the basis of contradictory medical evidence and not due to his or her own credibility judgments). The record shows that the ALJ gave controlling weight to Dr. James' opinion as it was more consistent with the other evidence of record. Dr. James, having reviewed all of plaintiff's records, including Dr. McKinley's report, found that plaintiff had only mild restrictions of daily living, moderate difficulties with social functioning and moderate difficulties in maintaining concentration, persistence and pace (Tr. 17, 146). See 20 C.F.R. § 416.927(f) (Indicating that state agency physicians are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation").

Moreover, while Dr. James found that Dr. McKinley's opinion regarding the severity of plaintiff's functional limitations was overestimated, an opinion with which the ALJ clearly agreed, the ALJ nevertheless took plaintiff's mental limitations into account, having specified in her hypothetical, and in her decision, the need for low stress, entry level, unskilled, routine and repetitive work, involving very simple instructions and simple decision making; no production line work; and a stable environment with limited contact with the public and co-workers (Tr. 18, 313-14). See Richardson v. Perales, 402 U.S. 389, 399 (1971) (Conflicts in the medical evidence are to be resolved by the ALJ and not the reviewing court). It therefore cannot be said that the ALJ's decision is not supported by substantial evidence or that there are material factual issues in dispute. Accordingly,

19

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment [Dkt. 10] is DENIED, defendant's motion for summary judgment [Dkt. 12] is GRANTED, and that the decision of the Commissioner is affirmed.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 10 July 2008

cc: All counsel of record by Notice of Electronic Filing